KEITH R. HUMMEL (*Pro Hac Vice* Application Forthcoming)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

JAMES LEE (Bar No. 192301)
ENOCH LIANG (Bar No. 212324)
JOE TUFFAHA (Bar. No. 253723)
LTL ATTORNEYS LLP
300 South Grand Ave, Suite 1400
Los Angeles, California 90071
Telephone: (213) 612-8900
Facsimile: (213) 612-3773

Attorneys for Applicant
NOUVEL, LLC

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| In re Ex Parte Application of NOUVEL, LLC<br><br>Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Mondo Bongo, LLC, William Bradley Pitt, and Warren Grant for Use in Foreign Proceedings. | Miscellaneous Action No.<br><br>*EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS AND SUPPORTING MEMORANDUM |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

I.   INTRODUCTION ............................................................................ 1

II.  BACKGROUND ............................................................................. 4

    A.   Relevant Persons and Entities ................................................. 4

    B.   Relevant Transactions ............................................................ 5

    C.   The Dispute Between Mondo Bongo and Nouvel ................................. 5

        1.   Detrimental Management of Chateau Miraval ........................... 6

        2.   Impasse at Quimicum ........................................................ 7

    D.   The Luxembourg Actions ......................................................... 9

    E.   The French Action ................................................................ 10

III. ARGUMENT .................................................................................. 11

    A.   Legal Standard .................................................................... 12

    B.   Nouvel's Application Meets the Statutory Requirements. ................... 12

    C.   The *Intel* Factors Strongly Favor Granting Nouvel's Application with Respect to the Luxembourg Action. ............................... 13

        1.   There Is No Practical Way for the Luxembourg Court To Order Discovery from Mondo Bongo, Brad Pitt, and Warren Grant. ................................................................. 13

        2.   Nouvel Seeks Relevant Information That Will Assist the Luxembourg District Court in the Luxembourg Action. ............ 15

        3.   No Foreign Discovery Restriction Bars Nouvel's Requested Discovery. .................................................... 17

        4.   Nouvel's Discovery Is Tailored To Avoid Undue Burden. ......... 18

    D.   The *Intel* Factors Strongly Favor Granting Nouvel's Application with Respect to the French Action. ................................... 18

1.  French Courts' Ability To Order Discovery from Mondo Bongo, Brad Pitt, and Warren Grant Is Limited...........................18

2.  Nouvel Seeks Relevant Information to Which the French Court Will Be Receptive.................................................20

3.  No Foreign Discovery Restriction Bars Nouvel's Requested Discovery. ...............................................21

4.  Nouvel's Discovery Is Tailored To Avoid Undue Burden.........22

IV.  CONCLUSION ....................................................22

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

Cour d'appel [CA] [Court of Appeal], May 10, 2017, 81/17 (Lux.).........................16

5

*In re Action & Prot. Found.*, No. C 14-80076,

6

2014 WL 2795832 (N.D. Cal. June 19, 2014) ......................................17

7

*In re Application Pursuant to 28 U.S.C. 1782 of Japan Display Inc.*,

8

No. 2:21-mc-00374, 2021 WL 4391882 (C.D. Cal. Apr. 5, 2021) ......................1

9

*In re Clerici*, 481 F.3d 1324 (11th Cir. 2007) ...........................................20

10

*In re Eurasian Nat. Res. Corp.*, No 18-mc-80041,

11

2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ...............................16, 17

12

*In re Ex Parte Apple Inc.*, No. 12-mc-80013,

13

2012 WL 1570043 (N.D. Cal. May 2, 2012).........................................16

14

*In re Ex Parte Application of Ambercroft Trading Ltd.*,

15

No. 18-MC-80074, 2018 WL 2867744 (N.D. Cal. June 11, 2018)......................16

16

*In re Ex Parte Application of Mentor Graphics Corp.*,

17

No. 16-mc-80037, 2017 WL 55875 (N.D. Cal. Jan. 4, 2017) .............................21

18

*In re Ex Parte Application of Pro-Sys. Consultants*,

19

No. 16-mc-80118, 2016 WL 3124609 (N.D. Cal. June 3, 2016) ........................11

20

*In re Ex Parte Application of Rigby*,

21

No. 13-cv-0271, 2013 WL 622235 (S.D. Cal. Feb. 19, 2013) ............................21

22

*In re Ex Parte LG Elecs. Deutschland GmbH*,

23

No. 12-cv-1197, 2012 WL 1836283 (S.D. Cal. May 21, 2012).....................3, 13

24

*In re Furstenberg Fin. SAS*, No. 18-MC-44,

25

2018 WL 3392882 (S.D.N.Y. July 12, 2018).......................................16

26

*In re Illumina Cambridge Ltd.*,

27

No. 19-MC-80215, 2019 WL 5811467, (N.D. Cal. Nov. 7, 2019) .....................15

28

*In re Joint Stock Co. Raiffeinsenbank*,

    No. 16-mc-80203, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ....................... 17

*In re Lufthansa Technick AG*,

    No. C17-1453, 2019 WL 280000 (W.D. Wash. Jan. 22, 2019) .......................... 19

*In re Machida*,

    No. 8:15-mc-00028, 2015 WL 12830388 (C.D. Cal. Nov. 3, 2015) .................... 1

*In re Mahltig Mgmt. Und Beteiligungsgesellschaft mbH*,

    No. 18-mc-80037, 2018 WL 11198061 (N.D. Cal. Apr. 24, 2018) .................... 13

*In re Nokia Corp.*,

    No. 5:13-mc-80217, 2013 WL 6073457 (N.D. Cal. Nov. 8, 2013) .................... 15

*In re Republic of Ecuador*,

    No. C-11-80171, 2011 WL 4434816 (N.D. Cal. Sept. 23, 2011) .................. 3, 12

*In re Republic of Kazakhstan for an Ord. Directing Discovery from*

    *Wells Fargo Bank, Nat'l Ass'n Pursuant to 28 U.S.C. § 1782*,

    No. 18-CV-409, 2021 WL 3561364 (D. Minn. Aug. 12, 2021) ......................... 16

*In re Smith*,

    No. 12-CV-1930, 2012 WL 12885234 (S.D. Cal. Oct. 9, 2012) ....................... 15

*In re Vahabzadeh*,

    No. 20-mc-80116, 2020 WL 7227205 (N.D. Cal. Dec. 8, 2020)........................ 21

*In re Wallis*,

    No. 18-mc-80147, 2018 WL 5304849 (N.D. Cal. Oct. 24, 2018) ....................... 12

*In re Will Co.*,

    No. 21-mc-80211, 2021 WL5322653 (N.D. Cal. Nov. 16, 2021) ...................... 18

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)..................passim

*London v. Does 1-4*, 279 F. App'x 513 (9th Cir. 2008) ........................................... 15

*Palantir Techs., Inc. v. Abramowitz*

    415 F. Supp. 3d 907 (N.D. Cal. 2019)................................................................. 14

Paris High Court, 29 Sept. 2016, n° 15/00961 ...................................................... 14

**Statutes & Rules**

28 U.S.C. § 1782 ..................................................................................passim

Civil L.R. 7-19 ............................................................................................ 1

Code Civil [C. Civ.] [Civil Code] art. 1131 (Lux.) .................................... 9

Code de Commerce [C. Com.] [Commercial Code] art. 109 (Lux.) ........................ 16

Code de Procédure Civile [C.P.C] [Civil Procedure Code]

   arts. 9, 138-42, 145-46 (Fr.) .................................................................. 16

Nouveau Code de Procédure Civile [C.P.C.] [New Code of Civil

   Procedure] arts. 58, 284-288, 350 (Lux.) ............................................ 14

**Other Authorities**

Bénabent, Droit des Obligations (16th ed. 2017) ...................................... 9

1   Applicant Nouvel, LLC ("Nouvel" or the "Company") respectfully applies to

2   the Court for an order of discovery pursuant to 28 U.S.C. § 1782 granting Nouvel

3   leave to obtain discovery from Mondo Bongo, LLC ("Mondo Bongo"), William

4   Bradley Pitt ("Brad Pitt" or "Mr. Pitt"), and Warren Grant ("Mr. Grant") for use in

5   foreign proceedings.  This application is brought on an *ex parte* basis pursuant to

6   Civil L.R. 7-19, as this Court has expressly authorized and routinely accepts *ex*

7   *parte* applications for 28 U.S.C. § 1782 discovery.  *See, e.g.*, *In re Application*

8   *Pursuant to 28 U.S.C. 1782 of Japan Display Inc.*, No. 2:21-mc-00374, 2021 WL

9   4391882 (C.D. Cal. Apr. 5, 2021); *In re Machida*, No. 8:15-mc-00028, 2015 WL

10  12830388 (C.D. Cal. Nov. 3, 2015).  This application is supported by this

11  memorandum of points and authorities, and the Declarations of Alexey Oliynik

12  ("Oliynik Decl."), Max Mailliet ("Mailliet Decl."), Stéphane Bonifassi ("Bonifassi

13  Decl."), and Enoch Liang ("Liang Decl.") filed herewith.  The subpoenas to be

14  served on Mondo Bongo, Mr. Pitt, and Mr. Grant are attached as Exhibits 2-4,

15  respectively, to the Liang Decl.

16      <u>Jurisdiction</u>:  This Court has subject matter jurisdiction over this application

17  pursuant to 28 U.S.C. § 1782, which provides for the making of applications for

18  leave to take discovery for use in a foreign proceeding.

19      <u>Intradistrict assignment</u>:  Assignment of this application to the Western

20  Division of this Court is proper because Mondo Bongo is a California corporation

21  headquartered at 9100 Wilshire Boulevard, STE 1000W, Beverly Hills, California

22  90212, in Los Angeles County; Mr. Pitt resides in Los Angeles County; and

23  Mr. Grant resides in Los Angeles County with a place of business at 9100 Wilshire

24  Boulevard, STE 1000W, Beverly Hills, California 90212.

25  **I.**    **INTRODUCTION**

26      On August 23, 2014, Brad Pitt and Angelina Jolie were married at Chateau

27  Miraval, a 700-acre estate in the south of France that produces what *Wine Spectator*

28  magazine has called "the best rosé in the world".  Mr. Pitt and Ms. Jolie had jointly

purchased Chateau Miraval though holding companies a few years before their marriage.  In 2013, Mr. Pitt's holding company, Mondo Bongo, sold 10% of Quimicum, the parent of Chateau Miraval, to Ms. Jolie's holding company, Nouvel, making Mr. Pitt and Ms. Jolie equal indirect co-owners of Chateau Miraval.

On September 19, 2016, Ms. Jolie filed for divorce from Mr. Pitt.  Since at least that time, Mr. Pitt and Mondo Bongo have exercised *de facto* control over Chateau Miraval, and have hindered Ms. Jolie and Nouvel from accessing information about, or supervising, Quimicum's and Chateau Miraval's business affairs.  For some time, Quimicum has lacked a manager and Chateau Miraval has lacked a valid board of directors, resulting in a situation where neither Quimicum nor Chateau Miraval can act or properly manage Chateau Miraval's business operations.  Nevertheless, Mondo Bongo and Mr. Pitt have acted as if they are the controlling shareholders of each company and have been taking unauthorized actions on their behalf.  Moreover, with Mondo Bongo's and Mr. Pitt's apparent consent—but not Nouvel's—many of Chateau Miraval's valuable trademarks are being registered in the name of a different company, Miraval Provence, which is a 50-50 joint venture between Chateau Miraval and Familles Perrin, the maker of various wines including Chateau Beaucastel and, in a joint-venture with Chateau Miraval, Chateau Miraval's famous rosé.

In 2021, Ms. Jolie sold her interest in Nouvel to Tenute del Mondo B.V., a subsidiary of SPI Group, an international beverages company.  Also in 2021, Mondo Bongo sued Nouvel in Luxembourg seeking to nullify the 2013 share transfer that had increased Nouvel's stake in Quimicum from 40% to 50%, thereby seeking to make itself the controlling shareholder of both Quimicum and Chateau Miraval. Nouvel and Tenute have repeatedly attempted to obtain information about Quimicum and Chateau Miraval from Mondo Bongo and Mr. Pitt and to communicate with them in an attempt to get the business affairs of Quimicum and Chateau Miraval in order.  Mondo Bongo and Mr. Pitt have refused to cooperate,

and have continued to act as if they were the controlling shareholders of both companies.  Mr. Pitt has even appointed his agent, Mr. Grant, to Chateau Miraval's board and has attempted to appoint him to Quimicum's board.

Mondo Bongo has used its 50% ownership interest in Quimicum to create a permanent shareholder deadlock, and to block efforts by Nouvel to learn more about or to exercise supervision over Quimicum or Chateau Miraval.  Consequently, Nouvel plans in the near future to bring lawsuits against the directors and officers of Chateau Miraval as well as Miraval Provence and its president and officers in France for tort and to restore proper governance.

Nouvel seeks this Court's assistance to obtain discovery from Mondo Bongo, Mr. Pitt and Mr. Grant—all based in California—to defend itself against Mondo Bongo's meritless Luxembourg lawsuits and to support its forthcoming French action.  The discovery Nouvel seeks is directly relevant to Nouvel's claims and defenses.  (*See infra* Sections III.C.2 and III.D.2.)  Obtaining discovery in Luxembourg and in France is very challenging, and, in any event, much of the evidence is in the possession of persons located in California.  Accordingly, Nouvel needs this Court's assistance to obtain evidence necessary to vindicate its rights.

Under 28 U.S.C. § 1782, interested parties such as Nouvel may obtain discovery for use before foreign tribunals from entities that are located within the United States or that are subject to the jurisdiction of its courts.  "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  Congress intended § 1782 to "substantially broaden[] the scope of assistance federal courts could provide for foreign proceedings", *id.* At 247-48, and courts have recognized that the multi-factored § 1782 analysis involves "permissive standards" that impose only a "minimal burden" on the applicant, *In re Republic of Ecuador*, No. C 11-80171, 2011 WL 4434816, at *1, *5 (N.D. Cal. Sept. 23, 2011); *see also, e.g., In re*

*Ex Parte LG Elecs. Deutschland GmbH*, No. 12-cv-1197, 2012 WL 1836283, at *3 (S.D. Cal. May 21, 2012) (explaining that § 1782 should be read in light of policies "favor[ing] broad discovery generally").

For the reasons set forth below, Nouvel respectfully requests that the Court enter the proposed order attached hereto as Exhibit 1 and authorize the service of the subpoenas for documents attached to the Liang Decl. as Exhibits 2-4.

## II.    BACKGROUND

## A.    RELEVANT PERSONS AND ENTITIES

SA Chateau Miraval ("Chateau Miraval") is a company established and having its registered office in F-83570 Correns, Domaine de Miraval, France. Chateau Miraval owns the Miraval estate, including a chateau of 1,132 square meters and almost 700 hectares of land, located in the south of France.  Chateau Miraval holds a 50% stake in a joint venture, SAS Miraval Provence ("Miraval Provence"), with SAS Familles Perrin ("Familles Perrin") to operate the estate's vineyards.

Quimicum S.a r.l ("Quimicum") is a limited liability company established and having its registered office at L-5365 Munsbach, 6C, rue Gabriel Lippmann, Grand Duchy of Luxembourg.  Quimicum owns about 99% of the shares of Chateau Miraval.

Nouvel is a limited liability company under the laws of California, established and having its registered office at 500 Capitol Mall, Suite 1600, Sacramento, California 95814.  Angelina Jolie held the shares of Nouvel until she sold them to Tenute del Mondo B.V. in 2021.

Mondo Bongo is a limited liability company incorporated under the laws of California, having its registered office at 9100 Wilshire Boulevard, STE 1000W, Beverly Hills, California 90212.

Mr. Pitt holds the shares of Mondo Bongo.  Mr. Pitt resides in Los Angeles County.

1    Mr. Grant is Mr. Pitt's agent and a purported current director of Chateau

2    Miraval.  He is resident in Los Angeles County, and is associated with Mongo

3    Bondo's registered office at 9100 Wilshire Boulevard, STE 1000W, Beverly Hills,

4    California 90212.

5    **B.    RELEVANT TRANSACTIONS**

6    In or about 2011, Ms. Jolie's company, Nouvel, purchased 40% of the share

7    capital of Quimicum, and Mr. Pitt's company, Mondo Bongo, purchased 60% of the

8    share capital of Quimicum, giving them joint control over Chateau Miraval.

9    (Mailliet Decl., Ex. L-4, 2013 10% Quimicum Share Transfer Agreement.)

10   On December 19, 2013, Mondo Bongo sold 10% of the share capital of

11   Quimicum to Nouvel for €1 (the "2013 10% Quimicum Share Transfer").  (*Id.*)

12   In 2013, Chateau Miraval created Miraval Provence as a 50-50 joint venture

13   with Familles Perrin.  (Oliyinik Decl. ¶ 6.)  The President of Miraval Provence is

14   Marc-Olivier Perrin.  (*Id.*)  The main purpose of Miraval Provence is the purchase,

15   sale, import and export of wine and spirits.  (*Id*.)  In Summer 2021, Miraval

16   Provence was converted from an SNC (société en nom collectif), to a SAS (société

17   par actions simplifiée). The first one is a form of partnership, whereas the second

18   company form is closer to a limited company.

19   On August 23, 2014, Mr. Pitt and Ms. Jolie were married at Chateau Miraval.

20   **C.    THE DISPUTE BETWEEN MONDO BONGO AND NOUVEL**

21   On September 19, 2016, Ms. Jolie filed for divorce from Mr. Pitt.  Since

22   around that time, Chateau Miraval has made numerous detrimental business

23   decisions and has refused Nouvel's requests for information relating to those

24   decisions.  Mr. Pitt exercises *de facto* control over Chateau Miraval's management

25   and operations.  Exacerbating matters, Quimicum, which owns approximately 99%

26   of Chateau Miraval and supervises its operations, currently has no manager and is

27   therefore unable to intervene or demand information from Chateau Miraval.

28   (Oliyinik Decl. ¶ 5; Bonifassi Decl., Ex. F-2, Sept. 8, 2020 Quimicum Meeting

Minutes at pages 25-27.)  Despite numerous attempts by Nouvel to advance a proposal with regard to the appointment of new managers for Quimicum, Mondo Bongo has refused to cooperate, instead manufacturing a deadlock in Quimicum and taking actions at Chateau Miraval to the detriment of Nouvel.  (*See infra* Section II.C.1.)

### 1.   Detrimental Management of Chateau Miraval

Currently, Roland Venturini ("Mr. Venturini") is the Chairman and CEO of Chateau Miraval, and Gary Bradbury ("Mr. Bradbury") is deputy CEO and a director of the same.  (*See* Bonifassi Decl., Ex. F-3, Aug. 23, 2021 Chateau Miraval General Meeting Minutes at pages 48-51.)  Following the resignation of a previous director, Mr. Venturini and Mr. Bradbury became the only directors of Chateau Miraval.  (*See id.*)

Under French law, Chateau Miraval can only act when it has at least three directors.  (Bonifassi Decl. ¶ 6.)  Regardless, Mr. Venturini and Mr. Bradbury appear to take management orders directly from Mr. Pitt without consulting Quimicum or Nouvel.  As one example, at a general meeting on August 23, 2021, Mr. Venturini and Mr. Bradbury appointed Mr. Grant—Mr. Pitt's registered agent—as a new director of Chateau Miraval.  (*Id.*, Ex. F-3, Aug. 23, 2021 Chateau Miraval General Meeting Minutes at pages 49, 51.)  Because Chateau Miraval's bylaws require a director to be a shareholder or to acquire a share of the company within three months of appointment—which Mr. Grant has not done—Mr. Grant's appointment is no longer valid.  (*Id.* ¶ 5; *id.*, Ex. F-1, Chateau Miraval Articles of Association.)

**Loss of Trademarks**.  For many years, Chateau Miraval has owned several brands—including Miraval, Chateau Miraval, and Chateau Miraval Côtes de Provence—and has registered its trademarks in France, the United States and other countries.  (Oliynik Decl. ¶ 7.)  According to Chateau Miraval's 2019 accounting, these trademarks constitute its third largest income source.  (*Id.*)

Dating back to at least 2017 and through 2021, Miraval Provence—an entity owned only 50% by Chateau Miraval—has registered numerous trademarks (including certain trademarks previously registered to Chateau Miraval) containing the word Miraval or a confusingly similar word under its own name. As one example, on November 26, 2020, Miraval Provence filed the trademark "Miraval Côtes de Provence"—which, according to Chateau Miraval's expert opinion, is valued at €24,500,000—under its own name in France. (*Id*. ¶ 8.) On October 13, 2021, Nouvel requested an explanation as to the registration of these trademarks, but Chateau Miraval has refused to provide an explanation and has denied Nouvel access to relevant information. (Bonifassi Decl., Ex. F-8, Nouvel Oct. 13, 2021 Letter; *id*., Ex. F-9, Brochier Oct. 27, 2021 Letter.)

**Property Renovations With No Apparent Business Purpose**. From 2014, Chateau Miraval has spent copious amounts on renovations that do not seem to have any business function. Chateau Miraval's accounts indicate that it spent €43,704,111 on building renovations in 2014 and around €2 million annually on buildings or improvements thereof from 2015 to 2017. (Oliynik Decl. ¶ 9.) In 2020, Chateau Miraval spent €1,106,658 on a swimming pool and €2,963,207 on "garment work". (*Id*.)

Notwithstanding such investments, there is no indication that these properties generate a profit for Chateau Miraval. (*Id*.) Instead, upon information and belief, Mr. Pitt appears to reside at or to utilize these properties for personal use. If the directors of Chateau Miraval are making costly renovations with no business purpose, and permitting Mr. Pitt to make use of the property without adequately compensating the company, they are wasting corporate resources and failing to act in the best interest of Chateau Miraval's shareholders.

### 2.    Impasse at Quimicum

In light of the above issues, Nouvel, as a shareholder of Quimicum, attempted to gather information about the operations of Chateau Miraval. For instance, at a

general shareholder meeting held on September 8, 2020—as well as in letters to Chateau Miraval and Quimicum—Nouvel challenged Mondo Bongo and Mr. Pitt's *de facto* management and control of Chateau Miraval.  (Bonifassi Decl., Ex. F-2, Sept. 8, 2020 Quimicum Meeting Minutes at page 26; *id.*, Ex. F-5, Nouvel Sept. 30, 2019 Letter; *id.,* Ex. F-6, Nouvel Sept. 22, 2020 Letter; *id.* Ex. F-7, Nouvel Oct. 20, 2020 Letter.)  On September 22, 2020, Nouvel demanded in writing that Quimicum's directors exercise supervision over its subsidiary, Chateau Miraval, conduct diligence about Chateau Miraval's investment decisions, and report back to Quimicum's shareholders.  (*Id.*, Ex. F-6, Nouvel Sept. 22, 2020 Letter.)  Quimicum ignored these demands, and refused to address Nouvel's concerns.

At around the same time, Quimicum's previous manager resigned, thus precluding Quimicum's shareholders from exercising control over or gathering information from Chateau Miraval until a new manager is appointed.  (*Id.*, Ex. F-2, Sept. 8, 2020 Quimicum Meeting Minutes at page 27.)

In 2021, Ms. Jolie sold her shares in Nouvel to Tenute del Mondo B.V. (Oliynik Decl. ¶ 3.)  Since then, Mondo Bongo has stonewalled any discussions regarding the appointment of new managers for Quimicum.  For example, at a general shareholder meeting on October 29, 2021, Nouvel offered to engage in discussions regarding the appointment of new managers.  (Bonifassi Decl. Ex. F-4, Bailiff's Nov. 11, 2021 Report at pages 55-57, 61-63.)  Mondo Bongo, in response, issued an ultimatum:  it would continue to deadlock operations at Quimicum unless Nouvel (1) provided Mondo Bongo with all documents relating to the transfer of its shares from Ms. Jolie to Tenute Del Mondo B.V.; and (2) transferred the disputed 10% of its shares in Quimicum free of charge to Mondo Bongo.  (*Id.*, Ex. F-10, Hoffeld Nov. 18, 2021 Letter at page 95.)  Nouvel did not accede to Mondo Bongo's ultimatum.  At a general shareholder meeting on November 22, 2021, Mondo Bongo declined even to discuss the management and direction of Quimicum until the Luxembourg dispute concerning the 2013 10% Quimicum Share Transfer is

1  resolved.  (Mailliet Decl., Ex. L-3, Mailliet Nov. 22, 2021 Report; *see infra* Section

2  II.D.)

3     By refusing to appoint new managers, Mondo Bongo has rendered Quimicum

4  unable to manage Chateau Miraval and its directors or to hold them accountable.

5  Thus, the operation of Chateau Miraval has effectively been left to Mr. Venturini,

6  Mr. Bradbury and purported director Mr. Grant—a legally invalid board of directors

7  who lack independence from Mr. Pitt and whose actions are legally ineffective.

8  **D.     THE LUXEMBOURG ACTIONS**

9     On September 21, 2021, Mondo Bongo sued Nouvel and Quimicum in

10  Luxembourg seeking to annul the 2013 10% Quimicum Share Transfer under which

11  Mondo Bongo transferred 10% of Quimicum to Nouvel.  (Mailliet Decl., Ex. L-1,

12  Sept. 21, 2021 Writ of Summons.)  Mondo Bongo argues that the 2013 10%

13  Quimicum Share Transfer is invalid under Luxembourg law for lack of "cause".

14  (*Id.* at pages 3-5, 11-12.)  Article 1131 of the Luxembourg Civil Code provides:

15  "An obligation without cause or with a false cause, or with an unlawful cause, may

16  not have any effect."  (*Id.*, Ex. L-8, Code Civil [C. Civ.] [Civil Code] art. 1131

17  (Lux.).)  In civil law, "cause" is the benefit or goal that a contracting party seeks

18  based on the structure of the contract.  (*Id.*, Ex. L-5, Bénabent, Droit des

19  Obligations, p. 167 (16th ed. 2017).)  Mondo Bongo argues that the contract lacked

20  cause because the price was inadequate compared to the actual value of the shares

21  transferred.  (*Id.*, Ex. L-1, Sept. 21, 2021 Writ of Summons at pages 4, 12.)  Mondo

22  Bongo seeks an order declaring the share transfer null and void for lack of cause.

23  (*Id.*)

24     In a second summons, filed on November 23 2021, Mondo Bongo initiated

25  summary proceedings against Nouvel in Luxembourg, seeking to have the shares

26  that were subject to the 2013 10% Quimicum Share Transfer placed into escrow, on

27  the basis of essentially the same arguments as in the first Luxembourg action.  (*Id.*,

28  Ex. L-2, Nov. 23, 2021 Writ of Summons at pages 24-29, 37-43.)

The two Luxembourg actions will be referred to herein collectively as the "Luxembourg Actions".

**E.      THE FRENCH ACTION**

Nouvel seeks to bring lawsuits in France against the directors and officers of Chateau Miraval as well as Miraval Provence and its president and officers to address actions and omissions that have harmed the interests of Chateau Miraval's shareholders. (*See supra* Section II.C.1.)  Specifically, Nouvel plans to file a tort action seeking monetary compensation against the directors and officers of Chateau Miraval as well as Miraval Provence and its president and officers on the basis of harm to shareholders at least under Article 1240 of the French Civil Code and Article L225-251 of the French Commercial Code.  (*See* Bonifassi Decl., Ex. F-12, Code de Commerce [C. Com] [Commercial Code] art. L225-251 (Fr.); *id.*, Ex. F-13, Code Civil [C. Civ.] [Civil Code] art. 1240 (Fr.).)  Nouvel will argue that the directors and officers of Chateau Miraval as well as Miraval Provence and its president and officers have made a series of decisions detrimental to the interests of Chateau Miraval's shareholders, such as transferring valuable trademarks to Miraval Provence and/or allowing registrations of valuable trademarks owned by Chateau Miraval to be made in the name of Miraval Provence and making costly renovations to the chateau with no apparent legitimate business purpose.  Viewed in conjunction with Mr. Pitt's and Mondo Bongo's improper *de facto* control over Chateau Miraval, these decisions suggest serious mismanagement by the directors of Chateau Miraval, or at least a failure to manage Chateau Miraval's operations in the interests of all its shareholders.  In order to properly bring and to maintain these actions, Nouvel requires more information about Chateau Miraval's operations and the control exercised by Mr. Pitt and Mondo Bondo, which neither Chateau Miraval nor Mondo Bongo is willing to provide.  (*See*, *e.g.*, *id.*, Ex. F-9, Brochier Oct. 27, 2021 Letter; *id.*, Ex. F-10, Hoffeld Nov. 18, 2021 Letter.)

1    To aid in its forthcoming tort suit, on December 14, 2021, Nouvel filed a

2    request for *in futurum* measures under Article 145 of the French Code of Civil

3    Procedure ("CPC") in the Commercial Court of Draguignan, France seeking to

4    preserve evidence in the possession of Chateau Miraval and its directors,

5    Mr. Venturini and Mr. Bradbury.  (*See id.* ¶ 9.)  Nouvel was concerned that Chateau

6    Miraval or its directors—who Nouvel believes may have engaged in fraudulent

7    behavior—may destroy information relevant to Nouvel's contemplated suit.  (*See*

8    *id*.)  Accordingly, Nouvel sought an *ex parte* order to preserve documents and data

9    relating to the finances, assets and management of Chateau Miraval, as well as those

10   relating to Chateau Miraval's relationship with Familles Perrin, Miraval Provence,

11   Mondo Bongo and Mr. Pitt.  (*Id*.)  On December 22, 2021, in a short order the

12   Commercial Court denied Nouvel's request for *in futurum* measures against

13   Chateau Miraval, Mr. Venturini and Mr. Bradbury.  (*Id*. ¶ 10.)

14   **III.    <u>ARGUMENT</u>**

15   Nouvel seeks discovery under Section 1782 from Mondo Bondo, Mr. Pitt, and

16   Mr. Grant of a targeted set of documents concerning the specific issues relevant to

17   both the existing Luxembourg and French actions and the contemplated French

18   action, including (i) the reasons for the 2013 10% Quimicum Share Transfer; (ii) the

19   transfer, sale of or consent (through act or omission) to register any of Chateau

20   Miraval's trademarks; (iii) renovations undertaken by Chateau Miraval with no

21   apparent legitimate business purpose; (iv) the payment, or nonpayment, of rent on

22   the residential properties of the Chateau Miraval estate; and (v) the governance,

23   supervision, and control of Chateau Miraval.  Nouvel's request should be granted

24   because Nouvel satisfies the statutory and discretionary criteria for evaluating

25   requests under Section 1782, which is meant to provide liberal court assistance to

26   parties seeking evidence for use in foreign proceedings.  *Intel*, 542 U.S. 241 at 247.

27

28

## A.   LEGAL STANDARD

Section 1782 authorizes the Court to order a person or entity residing or found within this District to produce documents or testimony for use in a foreign proceeding.  *See* 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 246-47.  To obtain such discovery, three threshold statutory requirements must be met:  "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for use in a foreign tribunal; and (3) the application is made by . . . any interested person".  *In re Republic of Ecuador*, 2011 WL 4434816, at *2 (quotation omitted).

Once these statutory requirements are established, the Court "retains wide discretion to grant discovery under Section 1782".  *In re Ex Parte Application of Pro-Sys. Consultants*, No. 16-mc-80118, 2016 WL 3124609, at *3 (N.D. Cal. June 3, 2016) (citing *Intel*, 542 U.S. at 260-61.  In *Intel*, the Supreme Court set out four non-exhaustive factors to guide the Court's discretion:  (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome".  542 U.S. at 264-65.

The Court should grant Nouvel's application because, as shown below, the application meets the three § 1782 statutory requirements, and the *Intel* factors weigh strongly in favor of Nouvel's request.

## B.   NOUVEL'S APPLICATION MEETS THE STATUTORY REQUIREMENTS.

Nouvel's application satisfies the three statutory requirements under § 1782.

*First*, Mondo Bongo is a California corporation headquartered in Los Angeles County and incorporated under the laws of California.  As such, Mondo Bongo "resides or is found" in this District.  *See In re Wallis*, No. 18-mc-80146, 2018 WL 5304849, at *3 (N.D. Cal. Oct. 24, 2018).  Mr. Pitt and Mr. Grant also reside in Los Angeles County, and therefore also "reside[] or [are] found" in this District.

*Second*, Nouvel seeks discovery for use in a "proceeding in a foreign or international tribunal".  28 U.S.C. § 1782(a).  Mondo Bongo has sued Nouvel before the District Court of Luxembourg in the Luxembourg Actions, while Nouvel plans to sue the directors and officers of Chateau Miraval as well as Miraval Provence and its president and officers in France.  Nouvel intends to use the discovery it obtains through this application to defend against the Luxembourg Actions and in support of the contemplated French Action.  (*See* Mailliet Decl. ¶ 9; Bonifassi Decl. ¶ 13.)

*Third*, as the defendant and the plaintiff, respectively, in the Luxembourg Actions and the contemplated French Action, Nouvel qualifies as an "interested party".  *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among . . . the 'interested person[s]' who may invoke 1782 . . . .").

## C.   THE *INTEL* FACTORS STRONGLY FAVOR GRANTING NOUVEL'S APPLICATION WITH RESPECT TO THE LUXEMBOURG ACTION.

The four *Intel* factors strongly weigh in favor of the Court exercising its discretion to grant Nouvel's application for the Luxembourg Actions.

### 1.   There Is No Practical Way for the Luxembourg Court To Order Discovery from Mondo Bongo, Brad Pitt, and Warren Grant.

The purpose of the first *Intel* factor is to assess "the need for § 1782(a) aid".  *Intel*, 542 U.S. at 264.  Whereas such need "is generally not as apparent [for participants in a foreign proceeding] as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad", the central inquiry is whether the "evidence, available in the United States, may be unobtainable absent § 1782(a) aid"

because it is "outside the foreign tribunal's jurisdictional reach".  *Id*.; *see also In re LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *1 (framing the first *Intel* factor as "whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid", not whether the person from whom discovery is sought is a participant in the foreign proceeding); *In re Mahltig Mgmt. Und Beteiligungsgesellschaft mbH*, No. 18-mc-80037, 2018 WL 11198061, at *2 (N.D. Cal. Apr. 24, 2018) (same).

Luxembourg courts likely would not order the type of discovery sought here. Discovery is very limited in Luxembourg.  (Mailliet Decl. ¶ 7.)  A party may seek a court order to preserve certain documents under Article 350 of the Luxembourg New Code of Civil Procedure, but the request must be made *before proceedings are initiated*.  Article 350 is unavailable in the disputes concerning the 2013 10% Quimicum Share Transfer because Mondo Bondo has already sued Nouvel.  (*Id.* ¶ 7; *see id.*, Ex. L-7, Nouveau Code de Procédure Civile [C.P.C.] [New Code of Civil Procedure] arts. 58, 350 (Lux.); *id.*, Ex. L-9, Cour d'appel [CA] [Court of Appeal], May 10, 2017, 81/17 (Lux.).)  Moreover, it is unlikely that a Luxembourg court would grant a request under Article 350 for documents located *outside of Luxembourg* (*id.* ¶ 7), which are precisely the documents sought by this request.

Another section of the Luxembourg New Code of Civil Procedure—Articles 284 to 288—allows a party to request that the judge hearing the case on its merits order either the opposing party or a third party to produce notarized or signed documents during the proceeding.  (*See id.*, Ex. L-7, Nouveau Code de Procédure Civile [C.P.C.] [New Code of Civil Procedure] arts. 284-88 (Lux.).)  However, Articles 284 to 288 are rarely used in litigation in Luxembourg because the party requesting documents under these Articles must describe each document sought in precise and specific detail, including the date, title, author(s) of each document.  (*Id.* ¶ 8.)  Nouvel is requesting documents responsive to descriptive categories rather than precise, individually-described documents in this § 1782 application, and is

1    incapable of identifying each individual document sought due to its lack of

2    knowledge.  Accordingly, Nouvel is unlikely to be able to obtain the discovery

3    sought in this § 1782 application in Luxembourg under Articles 284-288.  (*Id.*)

4          In light of the above, the first factor weighs in favor of granting Nouvel's

5    application.  *See Palantir Techs., Inc. v. Abramowitz,* 415 F. Supp. 3d 907, 912-13

6    (N.D. Cal. 2019) (finding that the first *Intel* factor weighed in favor of granting a

7    § 1782 application given that "discovery in Germany does not work the same way

8    and that a German Court could 'only request the submission of documents

9    particularly specified or referred by a party'"); *In re Illumina Cambridge Ltd.*, No.

10   19-MC-80215, 2019 WL 5811467, at *4 (N.D. Cal. Nov. 7, 2019) ("[T]he first *Intel*

11   factor would likely not weigh against discovery even if the target of the subpoena

12   was itself a party to a Foreign Action due to the lack of effective foreign discovery

13   procedures").  Although Mondo Bongo is a party to the Luxembourg proceedings,

14   there is no practical way to obtain the discovery sought here under Luxembourg

15   procedure.  Mr. Pitt and Mr. Grant are not parties to the Luxembourg proceeding.

16   There is no practical way to obtain the discovery sought here from them under

17   Luxembourg procedure, and in any case the Luxembourg court is unlikely to order

18   the production of the documents they possess that are located in the United States.

19   Thus, there exists a "need for § 1782(a) aid" to obtain the documents sought by this

20   application.  *Intel*, 542 U.S. at 264.

21                **2.    Nouvel Seeks Relevant Information That Will Assist the**

22                       **Luxembourg District Court in the Luxembourg Action.**

23         The second *Intel* factor addresses the nature and character of the foreign

24   proceeding and whether the foreign tribunal will be receptive to the Court's

25   assistance.  *Intel*, 524 U.S. at 264.  This factor also weighs in favor of granting the

26   requested discovery.

27         Nouvel seeks narrow, targeted discovery from Mondo Bongo, Mr. Pitt and

28   Mr. Grant concerning the issues raised by the Luxembourg Actions.  Nouvel seeks

documents concerning the objective of the 2013 10% Quimicum Share Transfer and any potential tax or financial benefit that any person could receive from it.  (*See* Requests 1 and 2).  This discovery is indisputably relevant to the issues in dispute. *See, e.g.*, *London v. Does 1-4*, 279 Fed. App'x 513, 515 (9th Cir. 2008); *In re Nokia Corp.*, No. 5:13-mc-80217, 2013 WL 6073457, at *3 (N.D. Cal. Nov. 8, 2013); *In re Smith*, No. 12-CV-1930, 2012 WL 12885234, at *2 (S.D. Cal. Oct. 9, 2012).

There is every reason to believe that the Luxembourg District Court would be receptive to receiving the discovery that Nouvel seeks.  Under Luxembourgish law, a contract of sale may be proven by any means, including extrinsic evidence. (Mailliet Decl., Ex. L-6, Code de Commerce [C. Com.] [Commercial Code] art. 109 (Lux.).)  In evaluating whether the 2013 10% Quimicum Share Transfer is null and void for lack of cause, a Luxembourg court would admit evidence from Mondo Bongo, Mr. Pitt or Mr. Grant about the purpose of the share sale.

Recognizing that Luxembourg courts are receptive to receiving evidence obtained in the U.S., several U.S. courts have granted requests pursuant to § 1782 for use in Luxembourg.  *See In re Furstenberg Fin. SAS*, No. 18-MC-44, 2018 WL 3392882, at *6-7 (S.D.N.Y. July 12, 2018) (ordering third-party banks to produce documents to investors concerning director's undisclosed conflict of interest for use in Luxembourg proceedings pursuant to § 1782); *In re Republic of Kazakhstan for an Ord. Directing Discovery from Wells Fargo Bank, Nat'l Ass'n Pursuant to 28 U.S.C. § 1782*, No. 18-CV-409, 2021 WL 3561364, at *2 (D. Minn. Aug. 12, 2021) (ordering third-party bank to provide discovery concerning an indenture for use in Luxembourg proceedings challenging arbitral award related to the indenture pursuant to § 1782).

Moreover, courts "'err on the side of permitting discovery'" absent information that the foreign tribunal "would reject information obtained through Section 1782 discovery".  *In re Eurasian Nat. Res. Corp.*, No. 18-MC-80041, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018) (quoting *In re Varian Med. Sys. Int'l*

1  *AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016));

2  *see also In re Ex Parte Application of Ambercroft Trading Ltd.*, No. 18-MC-80074,

3  2018 WL 2867744, at *4 (N.D. Cal. June 11, 2018) (relying on, *inter alia*,

4  declaration from counsel that he is unaware of any reason why foreign court would

5  not accept discovery obtained via § 1782).  Indeed, before concluding that the

6  second *Intel* factor weighs against discovery, "courts look for 'authoritative proof

7  that a foreign tribunal would *reject* evidence obtained with the aid of § 1782'".  *In*

8  *re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203, 2016 WL 6474224, at *5

9  (N.D. Cal. Nov. 2, 2016) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d

10  1095, 1100 (2d Cir. 1995)); *In re Ex Parte Apple Inc.*, No. 12-mc-80013, 2012 WL

11  1570043, at *2 (N.D. Cal. May 2, 2012) (opponent of § 1782 discovery bears

12  "burden of demonstrating that" foreign tribunal "would be unreceptive to U.S.

13  judicial assistance").  Here, there is every reason to believe that the Luxembourg

14  court would accept any evidence obtained through this § 1782 application, and no

15  reason to believe the Luxembourg court would reject it.  (*See* Mailliet Decl. ¶ 10.)

16        **3.**      **No Foreign Discovery Restriction Bars Nouvel's Requested**

17               **Discovery.**

18        The third *Intel* factor asks whether the "§ 1782(a) request conceals an attempt

19  to circumvent foreign proof-gathering restrictions or other policies of a foreign

20  country or the United States".  *Intel*, 542 U.S. at 265.  Although the Luxembourg

21  District Court does not itself provide discovery mechanisms that are as extensive as

22  those available in the United States, Nouvel is unaware of any legal provision that

23  would preclude Nouvel from obtaining or using discovery obtained via Section 1782

24  in Luxembourg.  (Mailliet Decl. ¶ 9.)  Indeed, as noted above, U.S. courts have

25  granted Section 1782 applications related to proceedings in Luxembourg.

26  Accordingly, this factor further supports Nouvel's § 1782 application.  *See, e.g.*,

27  *Eurasian*, 2018 WL 1557167, at *3 (noting absence of evidence of an attempt to

28  circumvent foreign law).  And  "[s]eeking more discovery than [the foreign]

discovery procedures allow does not circumvent [foreign] law." *In re Raiffeinsenbank*, 2016 WL 6474224, at *6; *see also In re Action & Prot. Found.*, No. C-14-80076, 2014 WL 2795832, at *5 (N.D. Cal. June 19, 2014) (noting that "nothing suggests an attempt to evade foreign proof gathering restrictions").

### 4. Nouvel's Discovery Is Tailored To Avoid Undue Burden.

Nouvel's proposed discovery is narrowly tailored and would not impose an undue burden on Mondo Bongo, Mr. Pitt or Mr. Grant. Nouvel seeks from Mondo Bongo and Mr. Pitt a targeted set of documents, generally kept in the ordinary course of business, relevant to the specific dispute at issue in the Luxembourg Actions—whether there was "cause" under Luxembourg law for the 2013 10% Quimicum Share Transfer. Nouvel makes two document requests (Requests 1 and 2) relevant to the Luxembourg action, and any burden on Mondo Bongo, Mr. Pitt and Mr. Grant will be minimal given that the requests concern a single contract. Also, the requests are well within the contours of normal discovery in the U.S. *See In re Will Co.*, No. 21-mc-80211, 2021 WL5322653, at *3 (N.D. Cal. Nov. 16, 2021) ("The 'proper scope' of requests under § 1782 is 'generally determined by the Federal Rules of Civil Procedure.'" (quoting *Varian Med. Sys. Int'l*, 2016 WL 1161568, at *5)). Mondo Bongo and Mr. Pitt should not have to conduct an extensive search to provide the documents, which should be readily available.

## D. THE *INTEL* FACTORS STRONGLY FAVOR GRANTING NOUVEL'S APPLICATION WITH RESPECT TO THE FRENCH ACTION.

The four *Intel* factors also strongly weigh in favor of the Court exercising its discretion to grant Nouvel's application for the contemplated French Action.

### 1. French Courts' Ability To Order Discovery from Mondo Bongo, Brad Pitt, and Warren Grant Is Limited.

Mondo Bongo and Mr. Pitt are not expected to be parties to the contemplated French Action. Indeed, neither of them was a party to Nouvel's request to preserve documents under Article 145 of the Code of Civil Procedure.

With respect to Mr. Grant, Nouvel's position is that he is no longer validly serving as a director under Chateau Miraval's bylaws.  (*See supra* Section II.C.)  Even if Mr. Grant were to become a party to the French Action, this factor still would favor granting Nouvel's request because it would be difficult or impossible for a French court to order the discovery sought in this application from him.  In general, French judges take a restrictive approach to granting pretrial document discovery.  (Bonifassi Decl. ¶ 8.)  To obtain documents through a document request under either Articles 138-42 or 145 of the French Code of Civil Procedure, a party must describe in precise and specific detail each document sought.  (*Id.* ¶¶ 8, 11; *see also id.*, Ex. F-11, Code de Procédure Civile [C.P.C] [Civil Procedure Code] arts. 138-42, 145 (Fr.).)  The only other alternative to obtain documents, a search order under Article 145, is very difficult to obtain, will be refused if meant as an investigative measure, and requires the seeking party to explain why documents responsive to each and every key word in the search order are necessary to the contemplated proceedings.  (*Id.* ¶ 8; *see also id.*, Ex. F-11, Code de Procédure Civile [C.P.C] [Civil Procedure Code] arts. 146 (Fr.).)  Nouvel is requesting documents responsive to descriptive categories rather than precise, individually-described documents in this § 1782 application, and is incapable of identifying each individual document sought or identifying precise key words and justifying why documents responsive to each and every key word are necessary to the contemplated proceedings due to its lack of knowledge.  Accordingly, Nouvel is unlikely to be able to obtain the discovery sought here in France.  (*Id.* ¶ 11.)  Indeed, Nouvel already sought documents and a search order under Article 145 from Chateau Miraval and its directors, and its request was rejected.  (*Id.*. ¶¶ 9-10.)  Moreover, French courts have limited powers to enforce any discovery orders in the event that the discovery targets located in the United States do not comply with the French court's order.  (*Id.* ¶ 12.)  Accordingly, the first *Intel* factor favors granting Nouvel's application.  *See In re Lufthansa Technick AG*, No. C17-1453, 2019 WL 280000, at

*2 (W.D. Wash. Jan. 22, 2019) (holding that "although Respondent is a participant in the litigation in France, the lack of an effective discovery mechanism available to Petitioner in France weighs in favor of allowing Petitioner to obtain the discovery material via § 1782"); *In re Clerici*, 481 F.3d 1324, 1335 (11th Cir. 2007) (finding that the first *Intel* factor favored petitioner because, although respondent was a party in a foreign proceeding, "the Panamanian Court cannot enforce its order against Clerici directly while Clerici is in the United States"); *Intel,* 542 U.S. at 264.

## 2.  Nouvel Seeks Relevant Information to Which the French Court Will Be Receptive.

The second *Intel* factor also weighs in favor of granting the requested discovery.  The critical issues in the contemplated French Action are the questionable actions and inactions of Chateau Miraval's directors and the improper control exercised by Mondo Bongo and Mr. Pitt.  Here, Nouvel seeks narrow, targeted discovery (Requests 3 to 11) from Mondo Bongo, Mr. Pitt, and Mr. Grant that is directly relevant to these issues, including discovery concerning Chateau Miraval's governance, Mondo Bongo's and Mr. Pitt's control over Chateau Miraval and its directors, and apparently improper transactions involving Chateau Miraval's trademarks and the use of Chateau Miraval's residential properties.

These materials have indisputable relevance to the French Action.  Nouvel expects to sue, *inter alia*, the directors and officers of Chateau Miraval for tort and for failure to manage Chateau Miraval's operations in the interests of its shareholders.  Documents concerning improper financial transactions and the failure of Chateau Miraval's directors to preserve company assets and to exercise independent judgment are directly relevant to Nouvel's claims.

The French court likely would be receptive to the discovery Nouvel seeks. (*See* Bonifassi Decl. ¶ 14; *see also id.,* Ex. F-14, Paris High Court, 29 September 2016, n° 15/00961 (holding that neither the Hague Convention nor the French Civil Code of Procedure preclude a party to a proceeding in France from collecting

evidence pursuant to § 1782 for use in the proceeding, as long as this evidence has been collected by a competent authority under the applicable law).)

Moreover, U.S. courts routinely grant Section 1782 requests for use in French proceedings. *See, e.g.*, *In re Vahabzadeh*, No. 20-mc-80116, 2020 WL 7227205, at *3-5 (N.D. Cal. Dec. 8, 2020) (granting § 1782 request for use in French proceeding); *In re Ex Parte Application of Rigby*, No. 13-cv-0271, 2013 WL 622235, at *3 (S.D. Cal. Feb. 19, 2013) (same); *In re Ex Parte Application of Mentor Graphics Corp.*, No. 16-mc-80037, 2017 WL 55875, at *2-3 (N.D. Cal. Jan. 4, 2017) (partially granting § 1782 request for use in French proceeding).

This factor also favors granting Nouvel's application as there is no basis here to believe that the evidence obtained through this § 1782 application would be rejected by the French courts. *See supra* Section III.C.2 (citing cases holding that in the absence of evidence that a foreign court would be unreceptive to evidence obtained under § 1782, courts err on the side of permitting discovery).

### 3.   No Foreign Discovery Restriction Bars Nouvel's Requested Discovery.

Although France does not itself provide discovery mechanisms that are as extensive as those available in the United States, Nouvel is unaware of any legal provision that would preclude Nouvel from obtaining or using discovery obtained via § 1782 in the French courts. (Bonifassi Decl. ¶ 13.) Moreover, as noted above, *see supra* Section III.D.2, U.S. courts have granted § 1782 applications for discovery for use in French proceedings. *See In re Mentor Graphics Corp.*, 2017 WL 55875, at *2 ("Though depositions and requests for categories of documents are asserted to be unavailable in the French proceeding . . . a party does not 'circumvent' foreign discovery procedures merely by pursuing material in the United States that would not be discoverable in the foreign proceeding."). Indeed, in *In re Vahabzadeh*, 2020 WL 7227205, at *3-4, the court granted a Section 1782 request to obtain documents the applicant might not have been able to obtain

through discovery in France when no evidence was presented that "French policy or restrictions 'prohibit[ed] the discovery sought' by [applicant]").

Accordingly, this factor further supports Nouvel's § 1782 application.

### 4.    Nouvel's Discovery Is Tailored To Avoid Undue Burden.

Nouvel's proposed discovery is narrowly tailored and would not impose an undue burden on Mondo Bongo, Mr. Pitt, or Mr. Grant.  Nouvel seeks a targeted set of documents, generally kept in the ordinary course of business, relevant to the specific disputes in the French Action, including Chateau Miraval's financial transactions and the actions of its directors.  The requested discovery is directly relevant to these issues, including discovery concerning the transfer of Chateau Miraval's trademarks, the use of the residential properties of the Chateau Miraval estate, and the governance and finances of Chateau Miraval.  These requests are again well within the contours of normal discovery in the United States.  *See supra* Section II.C.4.  Accordingly, Mondo Bongo, Mr. Pitt, and Mr. Grant should not have to conduct an extensive search for the requested documents.

## IV.    <u>CONCLUSION</u>

Nouvel seeks tailored discovery for use in a pending foreign proceeding. Nouvel's request satisfies § 1782's three statutory requirements, and the four discretionary *Intel* factors weigh heavily in favor of granting Nouvel's application. Accordingly, Nouvel respectfully requests that this Court issue the proposed order authorizing the issuance of the subpoenas attached to the Liang Decl. as Exhibits 2-4.

Dated: January 7, 2022

Respectfully submitted,

By: _/s/ Enoch H. Liang_
**LTL ATTORNEYS LLP**

JAMES LEE (Bar No. 192301)
ENOCH LIANG (Bar No. 212324)
JOE TUFFAHA (Bar No. 253723)
LTL ATTORNEYS LLP
300 South Grand Ave, Suite 1400
Los Angeles, California 90071
Telephone: (213) 612-8900
Facsimile: (213) 612-3773

**CRAVATH, SWAINE & MOORE LLP**
Keith R. Hummel (*pro hac vice* application
forthcoming)
(N.Y. Bar No. 2430668)

Attorneys for Applicant
NOUVEL, LLC