# Exhibit F-7



To: Quimicum S.à r.l. (the "**Company**")
attn. Mr. Stewart Kam-Cheong
6C, rue Gabriel Lippmann
L-5365 Munsbach
R.C.S. Luxembourg: B 41114

and

To: Ocorian Services (Luxembourg) S.à r.l.
attn. Manuel Mouget and Krystel Stoffel
6C, rue Gabriel Lippmann
L-5365 Munsbach
R.C.S. Luxembourg: B 91999

*by registered letter*

Luxembourg, 20 October 2020

Our ref. : 030282-70000 / 31630364

Dear Sirs,

Reference is made to your two letters dated 5 October 2020, the first regarding the termination of the management agreement dated 23 March 2019 (the "**Management Agreement**") and the second concerning our letter dated 22 September 2020 to the Sole Manager reminding the latter of his duty of care and diligence as manager of the Company (the "**Arendt Letter**"), as well as to the Sole Manager's email sent on 15 October 2020 to *inter alia* Terry Bird and Warren Grant containing a summary analysis of the financial situation of the Company (the "**Sole Manager Email**").

You have asked our client, **Nouvel LLC**, a limited liability company, having its registered office at 1990 S. Bundy Drive, CA 900025 Los Angeles, United States of America, registered under the laws of the state of California ("**Nouvel**"), to take position and provide you with their instructions and answers to the questions raised (i) during the annual general meeting of the shareholders of the Company held at the Company's registered office on 8 September 2020 (the "**AGM**") and (ii) in the Arendt Letter. You have further informed our client of your intention to terminate the Management Agreement with effective date as of 5 November 2020.

Yet, the instructions given by Nouvel to the Sole Manager during the AGM and in the Arendt Letter were very clear: Nouvel wants to receive sufficient comfort that the Sole Manager supervises the budget and performance/operations of Château Miraval S.A. ("**Miraval**"), on what basis the Sole Manager may give consent for certain actions in this subsidiary, and whether the Sole Manager has an appropriate level of information. Furthermore, as stated in the AGM, our client would like to receive proposals from the Sole Manager of the Company on how to distribute profits and/or reimburse existing shareholder loans to the shareholders of the Company going forward. The preliminary analysis in the Sole Manager Email does not

Arendt & Medernach SA
Registered with the Luxembourg Bar
RCS Luxembourg B 186371

arendt.com

41A avenue JF Kennedy
L-2082 Luxembourg
T +352 40 78 78 1

EXHIBIT F-7
PAGE 84



contain any proposals but is limited to a brief high level summary of the amount of the Company's distributable reserves and the amount owed by it under existing shareholder loans, without any further suggestions or nor explanations of the Company's financial position. Indeed, the questions in Annex 1 of the Arendt Letter have been asked, and requests during the AGM made by our client in order to ascertain whether the Sole Manager properly exercises his duty of care and diligence as manager of the Company.

While it appears from your response to the Arendt Letter and the Sole Manager Email that the Sole Manager is not in a position to answer these questions, which in itself shows that our client's concerns were well founded, our client is even more astonished that the onus of answering such questions is being redirected to the entity which has asked them in the first place and only amplifies such concerns. Indeed, a proper exercise of the duty of care and diligence of the Sole Manager does consist in engaging in appropriate discussions and enquiries with, and in turn asking questions to, the management of Miraval to provide appropriate answers. The absence of any such interaction with, and supervision of, the Company's subsidiaries, constitutes an act of gross negligence of the Sole Manager and such grossly negligent behaviour is not protected by the indemnification provisions of article 4 of the Management Agreement. We hope that you will remedy this instantly by proceeding as described above.

Furthermore, we would like to remind the Sole Manager that on the grounds of precisely such lack of supervision, he has not been granted discharge for the execution of his mandate and his resignation was not accepted during the AGM.

The resignation of the Sole Manager before a replacement has been accepted by the shareholders would not only leave the Company without management, which in itself is sufficient for such a resignation to be without effect, but is also very likely to cause undue harm to the Company, thereby resulting in clear liability of the Sole Manager. Consequently, he must continue to exercise his mandate as manager of the Company until a satisfactorily agreement has been reached between the shareholders of the Company.

We reiterate that in the event that our client does not obtain the appropriate answers and/or the necessary comfort regarding the instructions given during the AGM and the questions asked in the Arendt Letter by no later than 23 October 2020, we have been instructed to take all the necessary steps to secure our client's rights.

This letter is sent without any prejudicial acknowledgements and under the express reservation of any and all rights, notably but not exclusively regarding the termination of the Management Agreement.

Yours truly,

---
Arendt & Medernach S.A.
By: Laurent Schummer
Title: Partner

À : Quimicum SARL. (la **"Société"**)
à l'attention de M. Stewart Kam-Cheong 6C, rue Gabriel Lippmann
L-5365 Munsbach
R.C.S. Luxembourg : B 41114

et

A : Ocorian Services (Luxembourg) S.à r.l.
attn. Manuel Mouget et Krystel Stoffel
6C, rue Gabriel Lippmann
L-5365 Munsbach
R.C.S. Luxembourg : B 91999

Luxembourg, 20 octobre 2020

Messieurs,

Il est fait référence à vos deux lettres en date du 5 octobre 2020, la première concernant la résiliation du contrat de gestion en date du 23 mars 2019 (le **" Contrat de Gestion "**) et la seconde concernant notre lettre en date du 22 septembre 2020 au Gérant Unique rappelant à ce dernier son devoir de prudence et de diligence en tant que gérant de la Société (la **" Lettre Arendt "**), ainsi qu'au courriel du Gérant Unique envoyé le 15 octobre 2020 à *inter a!ia* Terry Bird et Warren Grant contenant une analyse sommaire de la situation financière de la Société (le **" Courriel du Gérant Unique ").**

Vous avez demandé à notre client, **Nouvel LLC,** une société à responsabilité limitée, dont le siège social est situé au 1990 S. Bundy Drive, CA 900025 Los Angeles, États-Unis d'Amérique, enregistrée sous le droit de l'État de Californie **(" Nouvel "),** de prendre position et de vous fournir ses instructions et réponses aux questions soulevées (i) lors de l'assemblée générale annuelle des actionnaires de la Société qui s'est tenue au siège social de la Société le 8 septembre 2020 (l'**" AGA "**) et (ii) dans la Lettre Arendt. Vous avez en outre informé notre client de votre intention de résilier le contrat de gestion avec une date effective au 5 novembre 2020.

Pourtant, les instructions données par Nouvel à l'Associé Unique lors de l'AGA et dans la Lettre Arendt étaient très claires : Nouvel veut recevoir une assurance suffisante que l'Associé Unique supervise le budget et les performances/opérations de Château Miraval S. A. **(" Miraval "),** sur quelle base l'Associé Unique peut donner son consentement pour certaines actions dans cette filiale, et si l'Associé Unique a un niveau d'information approprié. En outre, comme indiqué dans l'AGA, notre client souhaiterait recevoir des propositions de l'unique gérant de la société sur la manière de distribuer les bénéfices et/ou de rembourser les prêts existants aux actionnaires de la société à l'avenir. L'analyse préliminaire contenue dans l'email du Gérant Unique ne contient aucune proposition mais se limite à un bref résumé de haut niveau du montant des réserves distribuables de la Société et du montant dû par celle-ci au titre des prêts d'actionnaires existants, sans aucune autre suggestion ou explication de la situation financière de la Société. En effet, les questions de l'Annexe 1 de la Lettre d'Arendt ont été posées, et des demandes ont été faites au cours de l'AGA par notre client afin de vérifier si le Gérant Unique exerce correctement son devoir de prudence et de diligence en tant que gérant de la Société.

Alors qu'il ressort de votre réponse à la lettre d'Arendt et du courriel de l'unique gérant que ce dernier n'est pas en mesure de répondre à ces questions, ce qui en soi montre que les préoccupations de notre client étaient fondées, notre client est encore plus étonné que la charge de répondre à ces questions soit redirigée vers l'entité qui les a posées en premier lieu et ne fait qu'amplifier ces préoccupations. En effet, un exercice correct du devoir de

prudence et de diligence de l'unique gestionnaire consiste à s'engager dans des discussions et des enquêtes appropriées avec, et à poser à son tour des questions à la direction de Miraval pour qu'elle fournisse des réponses appropriées. L'absence d'une telle interaction avec, et d'une telle supervision des filiales de la Société, constitue un acte de négligence grave de l'Unique Gérant et ce comportement de négligence grave n'est pas protégé par les dispositions d'indemnisation de l'article 4 du Contrat de Gestion. Nous espérons que vous remédierez à cet instant en procédant comme décrit ci-dessus.

En outre, nous tenons à rappeler au Gérant unique qu'en raison précisément de ce manque de supervision, il n'a pas reçu de décharge pour l'exécution de son mandat et que sa démission n'a pas été acceptée lors de l'AGA.

La démission de l'Associé Unique avant qu'un remplaçant n'ait été accepté par les actionnaires laisserait non seulement la Société sans gestion, ce qui en soi est suffisant pour qu'une telle démission soit sans effet, mais est également très susceptible de causer un préjudice injustifié à la Société, entraînant ainsi une responsabilité claire de l'Associé Unique . En conséquence, il doit continuer à exercer son mandat de gérant de la Société jusqu'à ce qu'un accord satisfaisant ait été trouvé entre les actionnaires de la Société.

Nous réitérons que dans le cas où notre client n'obtiendrait pas les réponses appropriées et/ou le confort nécessaire concernant les instructions données lors de l'AGA et les questions posées dans la Lettre Arendt au plus tard le 23 octobre 2020, nous avons été chargés de prendre toutes les mesures nécessaires pour garantir les droits de notre client.

Cette lettre est envoyée sans aucun accusé de réception préjudiciable et sous la réserve expresse de tous les droits, notamment mais non exclusivement en ce qui concerne la résiliation de la convention de gestion.

_____

Arendt & Medernach S.A.
Par : Laurent Schummer
Titre : Associé