KEITH R. HUMMEL (*Pro Hac Vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

JAMES LEE (Bar No. 192301)
ENOCH LIANG (Bar No. 212324)
JOE TUFFAHA (Bar No. 253723)
LTL ATTORNEYS LLP
300 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone:  (213) 612-8900
Facsimile:  (213) 612-3773

*Attorneys for Applicant*
NOUVEL, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| In re Ex Parte Application of NOUVEL, LLC | Case No. 2:22-mc-00004-MSC-CFE<br><br>DECLARATION OF JEAN-SÉBASTIEN BORGHETTI |

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION
TO VACATE ORDER AND TO QUASH SUBPOENAS

I, Jean-Sébastien Borghetti, declare as follows:

**I.    QUALIFICATIONS**

1.    I have been employed as a law professor at the Panthéon-Assas Université, Paris, since 2009, teaching a combined course in French contract and tort law, and courses in general French civil law, contract law, tort law, comparative law, and economic analysis of contract and tort law.  I have also been an invited professor to various foreign universities, most recently to the University of Oxford (2018) and to Wake Forest University (2019).

2.    From 2005 to 2009, I was employed as a law professor at the University of Nantes, teaching contract law, tort law, and comparative law.  Prior to that, from 1998 to 2003, I was employed as an assistant law professor at Université Paris 1 Panthéon-Sorbonne.

3.    In 1996, I earned a Master's Degree in Management from HEC Paris and graduated from the Jean Monnet Faculty of Law (Paris 11 University) in initial legal studies.  In 1997, I earned an LLM *summa cum laude* (ranked first) in Private Law from Université Paris 1 Panthéon-Sorbonne.  In 2004, I earned a Ph.D. from Université Paris 1 Panthéon-Sorbonne.  And in 2005, I obtained the highest qualification for teaching law in France (*agrégation de droit privé et de sciences criminelles*), ranking third across the whole country.

4.    I am a member of the International Academy of Comparative Law, fellow of the European Law Institute, member of the World Tort Law Society, and member of the European Group on Tort Law.  I was a member of an academic working group on the reform of the law of obligations in France, under the auspices of the French Academy of Sciences (*Institut de France*) from 2009 to 2013.  I was also a member of a working group at the French Ministry of Justice on contract law reform from 2009-2010.  From 2018-2021, I was a member of the European Union

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

Expert Group on Liability and New Technologies.  I am currently acting as co-reporter of the European Law Institute project on products liability.

5.    I have published extensively, mostly in the field of contract and tort law, both in France and abroad.  I write the "contract and liability" column in *Revue des contrats*, and have recently edited a book on the French contract law reform from a French and German perspective (*Die Reform des französischen Vertragsrechts*, Mohr Siebeck, 2018), as well as a book on French civil liability in comparative perspective (*French Civil Liability in Comparative Perspective*, Hart Publishing, 2019).

6.    I submit this declaration to provide the Court with information that I understand may be relevant to the Court's determination of the Motion To Vacate Order Granting an Ex Parte Application Pursuant to 28 U.S.C. § 1782 and to Quash Subpoenas (the "Motion to Vacate") that I understand has been filed by Mondo Bongo, LLC ("Mondo Bongo"), William B. Pitt ("Mr. Pitt"), and Warren Grant ("Mr. Grant", and with Mondo Bongo and Mr. Pitt, the "Pitt Parties").

## II.    DISCOVERY RULES IN FRENCH PROCEDURAL LAW

7.    The main source of the procedural law applicable before French civil and commercial courts is the Code of Civil Procedure (*code de procédure civile*, CPC).  Over the course of time, a body of case law has developed, which supplements the Code (even though courts under French law are normally not allowed to set aside the rules set forth in the Code).  It should be noted, however, that there is no formal system of binding precedent (as there is in some common law jurisdictions).

8.    The most significant body of case law is that of the *Cour de cassation*, France's supreme court in civil, commercial, and criminal matters.  The *Cour de cassation* is concerned only with questions of law, not fact.  The *Cour de cassation*'s judgments are famous for being extremely terse – usually no more than one or two pages.  This is a consequence of the fact that the Court usually gives very little justification for the decision it takes, even when this decision is not a direct application

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION
TO VACATE ORDER AND TO QUASH SUBPOENAS

of the CPC or another regulation or statute. One should therefore not search in these judgments for the same kind of elaborate reasoning that can be found in the judgments of U.S. higher courts. It should also be noted that, until a couple of years ago, the *Cour de cassation* never openly relied on previous cases (which in any case are not binding and only offer guidance), since the official doctrine of French law was that the law is made by Parliament or the Government, and not by the courts.

9. Judgments of French lower courts are usually more developed than the *Cour de cassation*'s, even though they remain short by U.S. standards. Cases of lower courts are usually quoted in legal textbooks only when they relate to a recently passed statute or to an issue for which there is no or few *Cour de cassation* cases yet.

10. It should be stressed that French procedural law does not offer the same kind of discovery procedures as exist in the United States. Mechanisms allowing a party to collect evidence from the opposite party or from a third party are rather limited. Different rules apply in this respect depending on whether proceedings have already been initiated or whether discovery measures are being sought in the perspective of future proceedings.

11. When proceedings have already been initiated, each party must be provided with a copy of any document which is to be relied on by the other party (article 132 CPC). A party also may ask the court to order the disclosure of a document possessed by a third party or the other party. Article 138 CPC provides: "If, in the course of proceedings, a party intends to refer to an authentic or private document to which he has not been a party or to a document held by a third party, he may ask the judge hearing the case to order the issue of a copy or the production of the document." The request may or may not be granted, at the judge's discretion (article 139(1) CPC). When the request is granted, the third party who has been ordered to produce a document may invoke a "difficulty" or "lawful impediment" preventing him from applying the order, and he may ask that the order be retracted or

3

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

modified (article 141 CPC).  The same rules apply when one party wants to access a document held by the other party (article 142 CPC).

12.    As the wording of these provisions indicate, a party may not request general or open-ended discovery measures based on articles 139 or 142 CPC.  A party may only ask for the production of documents that have been precisely identified.  There is no way a party can seek broad discovery into the various documents held by the other party or a third party, if only because the only thing she can request is that the other party or the third party be ordered to produce a document; she cannot be granted authorization to go and fetch this document herself.

13.    When proceedings have not yet been initiated, a party may request that "measures of investigation" (*mesures d'instruction*) be ordered by a judge under article 145 CPC.  145 CPC provides:  "If there is a legitimate reason to preserve or establish before any trial the proof of facts on which the solution of a dispute may depend, legally admissible measures of investigation may be ordered at the request of any interested party, on application or in summary proceedings."  This is the procedure that has been used by Nouvel, LLC ("Nouvel") in the present case.

14.    Among the legally admissible measures of investigation that may be ordered by the judge is the appointment of someone in charge of making "findings" (*constatations*).  This is what the French judge in Draguignan has done in the present case.  The "fact-finder" (*constatant*) will normally be, or be assisted by, an *huissier*, *i.e.*, a bailiff exercising public power, as in the present case.  The bailiff (along with the fact-finder, as the case may be) may enter premises, even against the will of their owner or occupier, and seize or make a copy of files or documents.

15.    The set of documents that may be seized or copied will be determined by the judge's order, based on the claimant's application.  The judge may set a precise list of documents or define the criteria on the basis of which the documents will be selected.  Where digital documents are concerned, the judge may set a list of keywords

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION
TO VACATE ORDER AND TO QUASH SUBPOENAS

to select the documents that will be copied.[1]  In any case, the judge may only order measures "confined to the disputed facts described in the application".[2]  As the *Cour de cassation* has put it on several occasions, the judge cannot order "general measures of investigation".[3]

16.    For example, the *Cour de cassation* has confirmed that a judge may not, on the basis of article 145 CPC, authorize a bailiff to visit the premises of a company in order to "search for, describe and, if necessary, copy or have copied or reproduced any social, fiscal, accounting or administrative document, of any kind whatsoever, likely to prove the origin and extent of the misappropriation of customers and employees" by that company.[4]  Such an assignment is too broad.  A fact-finding mission ordered by the judge under article 145 CPC cannot be an ill-defined or random "fishing expedition".  It must rest on precise elements and the documents sought must be defined in advance with reasonable precision.  For this reason, Nouvel could not obtain an article 145 CPC order to seize documents identified using broad descriptive categories like those in Nouvel's 35 U.S.C. § 1782 request.

17.    On the other hand, the *Cour de cassation* has confirmed an article 145 CPC order in a case where it had been found that this order "specifically targets a

---

[1] *See, e.g.*, Cour de cassation, deuxième chambre civile, 10 June 2021, no. 20-10.570.

[2] *See* Cour de cassation, chambre commerciale, 23 June 2021, no. 20-22.253.

[3] *See, e.g.*, Cour de cassation, deuxième chambre civile, 7 January 1999, no. 97-10.831, Bull. civ. II, no. 3; Cour de cassation, chambre commerciale, 5 April 2018, no. 16-19.966; Cour de cassation, deuxième chambre civile, 10 June 2021, no. 20-10.570; Cour de cassation, chambre commerciale, 23 June 2021, no. 20-22.253.

[4] Ex. FO-1, Cour de cassation, deuxième chambre civile, 16 May 2012, no. 11-17.229, Bull. civ. II, no. 89.

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION
TO VACATE ORDER AND TO QUASH SUBPOENAS

search that is voluntarily limited to files, documents and correspondence, all of which are related to the facts in dispute, and that the said order relates only to precisely enumerated keywords that are related to the unfair competition activity complained of".[5]

18.    Some of the decisions cited by Alain Maillot in his Declaration offer a good illustration of French courts' restrictive policy as far as keyword-searches are concerned.[6]  In one case, for example, the Paris appellate court held that it was not possible for a discovery measure to cover all the mail where the name of the company targeted by the discovery was cited.[7]  In another case, the Rennes appellate court reviewed all the keywords that had been selected for the discovery and gave a detailed justification for each keyword it chose to confirm, while at the same time refusing some keywords which it deemed too broad when used alone, such as the name of the clients of the targeted company.[8]  In yet another case, the Angers court confirmed the article 145 CPC order on the ground that the list of keywords set by the initial judge for the discovery was "expressly limited to the disputed facts described without infringing on business secrets".[9]

19.    It should also be stressed that whatever fact-finding mission may be assigned by the judge will not be carried out by the claimant herself.  It is always an independent fact-finder who will carry out this mission.  Besides, whatever documents have been obtained or copied will normally not be disclosed directly to

---

[5] Cour de cassation, deuxième chambre civile, 10 June 2021, no. 20-10.570.

[6] Declaration of Alain Maillot, ¶ 8.

[7] Ex. FO-2, Cour d'appel de Paris, pôle 1, 2e chambre, 24 June 2021, no. 21/00687.

[8] Ex. FO-3, Cour d'appel de Rennes, 3e chambre commerciale, 13 October 2020, no. 19/07797.

[9] Ex. FO-4, Tribunal de commerce d'Angers, 5 January 2016, no. 2015016595.

6

the claimant.  Rather, they will be placed in escrow by the bailiff until the judge decides if these documents, or which of them, can be disclosed to the claimant.  The judge may make this decision in a trial or in his chambers, but only after the party whose documents have been copied has had an opportunity to make her observations and to object to the disclosure of the documents.  The party whose documents have been copied may also, of course, challenge the initial order by the judge and ask that it be retracted, either in full or partially (*see infra* ¶ 44 ff.).

### III.    DISCOVERY OF INFORMATION LOCATED OUTSIDE FRANCE UNDER ARTICLES 138 TO 141 AND/OR 145 CPC

20.    The circumstances under which a French court has jurisdiction to order the production of documents in the present case must be clarified before determining whether Nouvel is likely to obtain documents from the Pitt Parties on the basis of articles 138 to 141 or 145 CPC.

### A. Territorial Jurisdiction of French Courts

21.    As has been explained above, the production of documents by a third party may be ordered by a French court based on articles 138 to 141 CPC only after proceedings have been initiated.  It is then the court before which the proceedings have been initiated that has sole jurisdiction to order such measures.

22.    When discovery measures are being sought in advance of any proceedings based on article 145 CPC, those measures may be ordered either by the president of the court that has territorial jurisdiction to hear the possible future dispute, or by the president of the court which has jurisdiction over the place where the discovery measures are to take place.[10]  A French court may therefore not order

---

[10] *See, e.g.*, Cour de cassation, deuxième chambre civile, 15 October 2015, no. 14-17.564, Bull. civ. II, no. 837; Cour de cassation, chambre commerciale, 3 September

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION
TO VACATE ORDER AND TO QUASH SUBPOENAS

discovery measures in the United States, or in any foreign country, based on the second element of that rule, since it has no jurisdiction in foreign countries. It is only if the court has territorial jurisdiction over the possible future dispute that it may order discovery measures based on article 145 CPC, even beyond its own jurisdiction.

23.    Thus, the only French court that may order discovery measures to be carried out in a foreign country is the court that has jurisdiction over the dispute in relation to which these measures are sought.

### B. Cross-Border Discovery Measures

24.    Articles 138 to 141 and article 145 CPC are French procedural rules that may only be applied by French courts and not by foreign courts, which apply their own procedural rules. However, as a matter of principle, the power of a French court or judge does not extend beyond France's borders. A judgment by a French court is not *per se* enforceable outside France. This applies to any decision, summary judgment or procedural order issued by a French court, including any order pertaining to discovery measures, such as those grounded on articles 138 to 141 or article 145 CPC.

25.    A French court cannot therefore directly commission a bailiff or any similar authority in a foreign country to carry out investigation measures in that country. Nor can it directly authorize a party to carry out investigation measures in a foreign country. If a French court wishes to obtain evidence located in another country, or to order that evidence to be made accessible to a party, it must conform to the rules on the taking of evidence abroad.

26.    It is the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, concluded on March 18, 1970, that applies between France

2017, no. 16-12.196; Cour de cassation, deuxième chambre civile, 2 July 2020, no. 19-21.012.

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

and the United States in that respect. According to article 1 of that Convention, if a French court wishes to obtain evidence located in the United States, it must request the competent authority of the United States, by means of a letter of request (*commission rogatoire*), to obtain that evidence, or to perform some other judicial act. The competent U.S. authority is the Office of International Judicial Assistance, located in Washington. This procedure is obviously very lengthy and burdensome. It is ill-adapted to many commercial disputes, and I am not aware that it is often used in such disputes.

27.    While it is possible in theory that a French court would send an official letter of request to the U.S. Office of International Judicial Assistance and ask that a discovery measure ordered in France on the basis of articles 138 to 141 or article 145 CPC be carried out in California in the present case, this is extremely unlikely to happen in practice. Also, the ambit of any such measure would have to be determined in accordance with articles 138 to 141 or article 145 CPC and would therefore likely be narrower than what U.S. discovery procedures allow.

28.    I therefore regard it as highly unlikely that, in the present case, Nouvel would obtain documents from the Pitt Parties in California using articles 138 to 141 or 145 CPC.

### IV.    THE USE IN A FRENCH COURT OF DOCUMENTS OBTAINED OUTSIDE FRANCE

29.    Under French law, as a rule, facts can be established by any means and it is for the judge to decide what evidentiary value, if any, should be attributed to any piece of evidence submitted to him. Any type of evidence, such as a document or testimony, may be produced by a party. The only requirement is that the other party have an opportunity to discuss and criticize that evidence and that the evidence not be obtained by illegal means, such as criminal conduct.

9

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

30.     In this context, it should come as no surprise that French courts have no problem in allowing the use of documents or other types of evidence obtained through foreign discovery measures in lawsuits brought before them.  The only requirement is that the other party have an opportunity to weigh in on these documents, like any other piece of evidence produced before a French court.

31.     This principle was clearly set out by the *Cour de cassation* in a case where one party was arguing that testimonies made in Venezuela in accordance with the law of that country should not be admissible before a French court.  The *Cour de cassation* rejected that argument and held as follows:

> "If proceedings initiated in France can only be governed by French law, there is nothing that prevents taking into account, in the course of these proceedings, testimonies gathered in a foreign country by the competent authority under the law of that country, acting in accordance with the forms defined by that law, either pursuant to an official letter of request [from a French judge] or at the request of one party."[11]

32.     The Court added:

> "If the French conception of international public policy prevents the recognition of a foreign judgment which has not respected the rights of the defense, these rights are not infringed as long as the evidence taken abroad has been submitted to an adversarial debate before the French judge."

33.     The principles set out in this case have never been called into question. They confirm that evidence lawfully obtained abroad is admissible evidence before a French court, provided the court has granted the parties an opportunity to discuss it. In that case, the evidence produced were testimonies, but the same rule applies without question to documents or other types of evidence.

---

[11] Ex. FO-5, Cour de cassation, première chambre civile, 22 February 1978, no. 77-10.109, Bull. civ. I, no. 73.

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION
TO VACATE ORDER AND TO QUASH SUBPOENAS

34.    It should also be noted that the *Cour de cassation* explicitly accepts that the evidence need not have been obtained through a formal letter of request.  Evidence that has been obtained directly at the request of one party, without the intervention of a French court, is admissible.

35.    Several French decisions have confirmed that these rules apply to evidence obtained in the United States under 35 U.S.C. § 1782.  For example, the Versailles appellate court has taken the position that 35 U.S.C. § 1782 allows a foreign party involved in legal proceedings in a country other than the United States to request the U.S. judge to compel the other party to produce documents within its jurisdiction, in application of U.S. document production rules; and that it is lawful for a party involved in French proceedings to bring a request under 35 U.S.C. § 1782 before a U.S. court.[12]

36.    In another case, the Nancy court has stated that "the gathering of evidence is governed solely by the law of the place where the evidence is located" and has allowed evidence obtained under 35 U.S.C. § 1782 on the condition, set by the U.S. District Court that had allowed the discovery, that the parties meet at an evidentiary hearing with the judge, in order to reduce the scope of disclosure and protect confidentiality[13].  In that same decision, the court specifically held that there was no need for it to initiate discovery measures in the United States using a formal letter of request, since discovery was already under way at the defendant's initiative.

37.    The Paris first instance court has also confirmed that evidence obtained under 35 U.S.C. § 1782 is admissible before a French court.  In a well-reasoned judgment, it stated:

---

[12] Ex. FO-6, Cour d'appel de Versailles, 12e chambre, section 2, 20 May 2010, no. 09/01617.

[13] Ex. FO-7, Tribunal de commerce de Nancy, 13 January 2014, no. 2012011430.

11

"Neither the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad, nor the rules of the Code of Civil Procedure prevent a party from citing, during the present proceedings in France, evidence gathered in the context of a discovery procedure initiated in parallel in the United States, provided that this evidence was collected by a competent authority under the law applicable in that State and in accordance with the forms defined by that law, it being observed that it will be for the French court to assess its evidentiary value and its impact on the merits of the case before it. In this respect, it has not been demonstrated by [the claimant in the present proceedings], who resides in the United States, that the discovery procedure initiated would be contrary to the law applicable in that State, given that it is based on Section 28, paragraph 1782 of the United States Code ("USC"), according to which a court of the district in which a person resides or is located may order him to provide his testimony or statement or to produce a document or anything else intended to be used in proceedings before a foreign or international court, including in a criminal investigation prior to a formal indictment."[14]

38.    This opinion confirms the principle set by the *Cour de cassation* concerning evidence obtained abroad, in the specific context of U.S. discovery measures.  It clearly states that evidence lawfully obtained in the United States in application of 35 U.S.C. § 1782 is admissible before a French court, and that it is for the French court to assess the value of that evidence.

39.    The above-mentioned cases also strongly suggest that French courts would not regard a same party's requests under 35 U.S.C. § 1782 in the United States and under article 145 CPC in France as contradictory.  As the Nancy court put it, "the gathering of evidence is governed solely by the law of the place where the evidence is located",[15] and it is normal that a party should use local rules and procedures in the different countries where evidence needs to be gathered.  Under French law there is nothing inconsistent about simultaneously seeking article 145 discovery in France and

[14] Ex. FO-9, Tribunal de grande instance de Paris, 3ᵉ chambre, 2ᵉ section, 29 September 2016, no. 15/00961.

[15] Ex. FO-7, Tribunal de commerce de Nancy, 13 January 2014, no. 2012011430.

12

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

35 U.S.C. § 1782 discovery in the United States, even on the same topics, given the territorial restriction to article 145 CPC.  In my opinion, a French court would never expect a party to French proceedings to resort primarily to the French CPC's limited discovery procedures and to request the issue of a formal letter of request by the French court in order to gather evidence in another country, where that country offers equivalent or better discovery procedures, which can be initiated directly by that party.  Rather, the French court would expect that party to do what she can on her own initiative to gather evidence outside its jurisdiction.

40.    A basic principle of French procedural law is that it is for the parties to allege and prove the facts which substantiate their claim.  The judge's role is to resolve the dispute in accordance with the law, not to go fishing for the facts.  This is often expressed by the Latin dictum: *da mihi factum et dabo tibi jus*—give me the facts, and I shall give you the law.  Article 6 CPC provides:  "In support of their claims, the parties have the burden of alleging the facts on which they are based."  And article 9 of that same Code adds:  "It is for each party to prove in accordance with the law the facts necessary for the success of her claim."  It is therefore expected that the parties will gather evidence by themselves.  In the French approach to judicial proceedings, the court is not, and has never been considered as, an authority in charge of centralizing the gathering of evidence.  The judge can order discovery measures to help one party gather evidence, as has been explained above, but facilitating the gathering of evidence is only an ancillary mission for him, and no judge will feel offended or insulted because a party has lawfully gathered evidence, be it in France or abroad, without asking him permission first.  Rather, a judge expects the parties to take their interests in their own hands and to take whatever initiative is needed to gather evidence.  Only when a party is faced with an obstacle that she cannot overcome is she expected to go to the judge and to ask for help.

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

41.     Therefore, I have no doubt that a French court would allow Nouvel to use documents obtained from the Pitt Parties under 35 U.S.C. § 1782 for use in a lawsuit against Chateau Miraval's directors in France and would not find Nouvel's 35 U.S.C. § 1782 and article 145 CPC requests contradictory.

## V.    THE RIGHT OF THE SUBJECT OF AN ORDER BASED ON ARTICLE 145 CPC TO CHALLENGE OR LIMIT IT

42.     There are several mechanisms that protect the addressee of an order based on article 145 CPC.

43.     This first protection is obviously the set of conditions required for such an order to be granted.  As article 145 puts it, there must be "a legitimate reason to preserve or establish before any trial the proof of facts on which the solution of a dispute may depend".  When assessing that legitimate reason, the judge must consider the potential addressee's legitimate interests, including the preservation of medical secrets, of business secrets, of the right to respect for the home and of the right to privacy.[16]

44.     The second protection, which has already been mentioned (*see supra* ¶ 19), is that whatever documents have been obtained or copied pursuant to an article 145 CPC order will normally not be disclosed directly to the claimant.  Rather, they will be placed in escrow by the bailiff until the judge decides if these documents, or which of them, can be disclosed to the claimant.  The judge may take this decision in a trial or in his chambers, but only after the party whose documents have been copied has had an opportunity to make her observations and to object to the disclosure of the documents.  In practice, the judge will therefore sort out the documents that have been copied to decide which ones can be effectively disclosed to the claimant.  In some cases, he will organize one or even several hearings with the parties'

---

[16] *See* F. Ferrand, Preuve, in *Répertoire de procédure civile* (Dalloz, 2013) ¶ 383.

14

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

counsels, during which the documents will not be shown to the claimant's counsel, but in which the counsels of both parties will have an opportunity to explain why each document should or should not be disclosed to the claimant.

45.    When an order to have documents copied is issued under article 145 CPC, it is therefore not the order itself that determines the exact scope of the documents that will eventually be disclosed to the claimant.  That exact scope will be determined in a second step by the judge who has issued the order, based on the actual content of the documents that have been copied and put under escrow by the bailiff, and on the observations of both parties.

46.    The third protection, which has also been mentioned above (see *supra* ¶ 19) is of course the possibility for the addressee to challenge the order in court.  The addressee may ask that the order be retracted, either in full or partially.  While a complete retraction (*rétractation*) means that none of the documents copied may be disclosed to the claimant (nor used in court if claimant has already accessed them), a partial retraction amounts to a narrowing of the scope of the initial order.  The judgment on retraction may itself be appealed.

47.    Of course, a partial retraction of the order does not preclude the sorting out of the copied documents mentioned above.  In other words, if the initial order is partially retracted, the judge will still have to sort out the documents which were legitimately copied under the order as partially retracted, in order to decide which of these documents may be disclosed to the claimant.[17]  The judge normally will wait

---

[17] *See, e.g.*, the decisions cited in Declaration of Alain Maillot, ¶ 8: Ex. FO-8, Tribunal de commerce de Paris, référé, 16 February 2018, no. 2017061844; Ex. FO-3, Cour d'appel de Rennes, 3ᵉ chambre commerciale, 13 October 2020, no. 19/07797; Cour d'appel de Paris, pôle 1, 2ᵉ chambre, 24 June 2021, no. 21/00687.

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

until the judgment on retraction has been issued, and even until the subsequent appeal procedure has reached its conclusion, before sorting out the documents that will be disclosed to the claimant. The entire process of first adjudicating the request to retract the article 145 CPC order followed by hearings to determine which seized documents may be disclosed to the claimant often takes over one year.

48. Chateau Miraval's directors can therefore seek to narrow the scope of the article 145 order by asking that this order be partially retracted, so that fewer documents are released to Nouvel than were seized; but, independently from such retraction, they will in any case have an opportunity to discuss what documents, among those that were copied, may effectively be disclosed to Nouvel.

## VI.   A NOTE ON ACCESS TO EXHIBITS

49. Finally, I note that under French law, documents filed with the court are not accessible to third parties. The only persons who have access to documents filed with the court are the parties to the proceedings themselves.

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 2, 2022 in Paris.

_____
Jean-Sébastien Borghetti

DECLARATION OF JEAN-SÉBASTIEN BORGHETTI IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ORDER AND TO QUASH SUBPOENAS